KAREN P. HEWITT
United States Attorney
PAUL L. STARITA
Assistant U.S. Attorney
California State Bar No. 219573
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6507
Email: paul.starita@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARIO ARMANDO REYES-LOPEZ,<br><br>Defendant. | Criminal Case No. 08CR0987-IEG<br><br>DATE: May 5, 2008<br>TIME: 2:00 p.m.<br><br>UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:<br><br>(1) COMPEL DISCOVERY AND PRESERVE EVIDENCE;<br>(2) PRODUCE GRAND JURY TRANSCRIPT OR CONDUCT *IN CAMERA* REVIEW;<br>(3) DISMISS COUNTS 1, 3, 5, AND 7 OF INDICTMENT; AND<br>(4) GRANT LEAVE TO FILE FURTHER MOTIONS.<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Paul L. Starita, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's above-referenced motions together with Statement of Facts and Memorandum of Points and Authorities. This Response and Opposition is based upon the files and records of the case.

//

//

## I

## STATEMENT OF THE CASE

On April 1, 2008, a federal grand jury in the Southern District of California returned a eight-count Indictment charging defendant MARIO ARMANDO REYES-LOPEZ ("Defendant") with (i) bringing in illegal aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and aiding and abetting, in violation of 18 U.S.C. § 2, and (ii) transportation of illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). Defendant was arraigned on the Indictment on April 1, 2008, and pleaded not guilty.

## II

## STATEMENT OF THE FACTS

### A. APPREHENSION

In the morning, on March 14, 2008, while United States Border Patrol agents and Immigration and Customs Enforcement agents were conducting a joint anti-smuggling operation, Border Patrol agents observed a green Chevrolet pick-up truck with multiple persons in the cab and a tarp covering something in the rear of the truck traveling a known alien smuggling route. Border Patrol agents followed the truck and when it stopped at a stop sign, an agent noticed a white tennis shoe sticking up from underneath the tarp in the bed of the truck. At this point, Border Patrol agents attempted to stop the truck by turning on their lights and siren but the driver of the truck failed to yield. After a pursuit, in which Defendant drove the load vehicle in an extremely reckless manner, Defendant stopped the load vehicle and attempted to flee. Defendant and 19 other illegal aliens were apprehended and transported to the Calexico Border Patrol Station for further processing.

### B. DEFENDANT'S POST-*MIRANDA* STATEMENT

At approximately 11:54 a.m., Immigration and Customs Enforcement agents advised Defendant of his Miranda rights in the Spanish language. Defendant stated that he understood his rights and that he was willing to answer questions without the benefit of counsel. In sum, Defendant stated that: he had lived in Mexicali for the last two years; he last entered the United States by walking through the mountains and was then picked-up and transported to a load house in Brawley, California, where he stayed for seven days; earlier in the day, on the day he was apprehended, he was picked up by "Luis",

an alien smuggler he met about one year ago, in a truck that already contained illegal aliens; he and Luis drove to a field and picked-up more illegal aliens which were dropped off at the field by a green Windstar van with Baja California, Mexico, license plates; Luis drove the truck to a ranch and got out; he knew all the persons in the load vehicle were illegal aliens; Luis gave him $1000.00 to drive the load vehicle (Defendant had $1,599 in his possession) to Los Angeles; and he was to pay $1,500.00 to be smuggled to San Bernardino, California. This interview was digitally recorded.

**C. <u>MATERIAL WITNESSES' STATEMENT</u>**

Border Patrol agents retained four of the 19 illegal aliens being transported by Defendant as material witnesses. Each of the material witnesses were interviewed and their interviews are summarized as follows:

**(1) <u>Juan Munoz-Mendoza</u>**

Mr. Munoz-Mendoza stated that he jumped the border fence with 7 other persons (none of which were Defendant) and was picked-up by a car and transported to a load house for further travel to Thermal, California. He admitted that he is a citizen and national of Mexico with no legal right to enter or remain in the United States. He was to pay $1,700.00 to be smuggled to his ultimate destination. He was unable to identify Defendant because he was placed in the bed of a pick-up truck (the load vehicle) and a tarp was placed over him.

**(2) <u>Jorge Mora-Gutierrez</u>**

Mr. Mora-Gutierrez stated that he crossed border with a guide through the mountains near Tecate, California, and walked to Interstate 8 where he was transported to a load house for further travel to Los Angeles, California. He admitted that he is a citizen and national of Mexico with no legal right to enter or remain in the United States. He made arrangements in Tijuana to be smuggled to Los Angeles for $2000.00. Since he was placed in the cab of a pick-up truck and covered with a blanket, he could not identify Defendant.

**(3) <u>Gabriel Rivera-Rivera</u>**

Mr. Rivera-Rivera stated that crossed border with 7 other individuals (none which was Defendant) through the mountains and was then transported by car to a house where he was loaded into the bed of a pick-up truck with 7 or 8 other individuals. He admitted that he is a citizen and national

of Mexico with no legal right to enter or remain in the United States. He made smuggling arrangements in Mexicali to be smuggled to Los Angeles, California, for $2,000.00 to $2,500.00. He also was unable to identify Defendant.

**(4) Pedro Negrete-Cardenas**

Mr. Negrete-Cardenas stated that he crossed the border by floating on a raft across a canal and then was taken by car to a garage with only people inside and a fence surrounding it with an old house nearby. He stated that people continuously came and went from this garage during his stay and that he was eventually loaded into the bed of a pick-up truck with approximately 6 other individuals. He also stated that on the morning that he was loaded into the pick-up truck a man named "Pedro" had woken him up and asked him for his name and sponsors telephone numbers to ensure payment for his travel to Los Angeles. He was unable to identify Defendant.

All of these interviews were digitally recorded.

**D. PREVIOUS APPREHENSIONS**

Over the last 2 to 3 years, Defendant has been apprehended on approximately 16 separate occasions by Border Patrol agents. Based on the facts and circumstances surrounding these apprehensions, Border Patrol agents believe that Defendant is and has been a guide and driver for Alien Smuggling Organizations operating in Imperial County, California.

## III

## POINTS AND AUTHORITIES

**A. PRODUCTION OF DISCOVERY AND PRESERVATION OF EVIDENCE**

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. To date, the United States has produced 134 pages of discovery to Defendant's counsel, including investigative reports and Defendant's statements. Also, the United States has produced a DVD of Defendant's post-arrest interview and DVDs of the material witnesses' interviews.

//

//

**1. Defendant's Statements**

The United States will disclose to Defendant the substance of any relevant oral statement made by Defendant, before or after arrest, in response to interrogation by a person Defendant knew was a government agent if the United States intends to use the statement at trial. The United States will also disclose and make available for inspection, copying or photographing the following: (1) any relevant written or recorded statement by the defendant if the statement is within the United States' possession, custody, or control, and the attorney for the United States knows--or through due diligence could know--that the statement exists,[1/] (2) that portion of any written record containing the substance of any relevant oral statement made before or after arrest if Defendant made the statement in response to interrogation by a person Defendant knew was a government agent, and (3) Defendant's recorded testimony before a grand jury relating to the charged offense, if any.

**2. Arrest Reports and Notes**

The United States has already produced to Defendant all reports and notes known to the United States relating to Defendant's arrest in this case and will continue to comply with its discovery obligations.

**3. Brady Material**

The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963).

**4. Prior Record**

The United States has provided Defendant with a copy of Defendant's known prior criminal record under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129, 130 (9th Cir. 1990). Should the United States determine that there are any additional documents pertaining to Defendant's prior criminal record, those will be promptly provided to Defendant.

**5. 404(b) Material**

The United States will disclose, in advance of trial, the general nature of any "other bad acts"

---

[1/] However, "the Government is not obligated by Rule 16(a) to anticipate every possible defense, assume what the defendant's trial testimony...will be, and then furnish the defendant with otherwise irrelevant material that might conflict with the defendant's testimony." United States v. Gonzalez-Rincon, 36 F.3d 859, 865 (9th Cir. 1994) (citation omitted).

evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

**6. Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**7. Preservation of Evidence**

The United States has no opposition to a preservation order.

**8. Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The United States, however, need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**9. Witnesses**

The United States will provide a list of witnesses in its trial memorandum, including law enforcement witnesses. The grand jury transcript of any person who will testify at trial will also be produced in advance of trial.

**10. Jencks Act Material**

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

**11. Giglio Material**

The United States has complied and will continue to comply with its discovery obligations under Giglio v. United States, 405 U.S. 150 (1972).

//

//

**12. Reports of Examinations and Tests**

The United States will provide Defendant with any scientific tests or examinations in accordance with Rule 16(a)(1)(F).

**13. Henthorn Material**

The United States will comply with its obligations under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**14. Confidential Informants/Cooperating Witnesses**

The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). Where there is a confidential informant or cooperating witness involved in a case, the Court may, in some circumstances, be required to conduct an in camera inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant or cooperating witness who is a material witness with evidence helpful to the defense or essential to a fair determination in this case, the United States will either disclose the identity of the informant or submit the informant's identity to the Court for an in camera inspection.

**15. Expert Witnesses**

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

//

//

**B. GRAND JURY TRANSCRIPTS SHOULD NOT BE PRODUCED**

Defendant's motion is founded on an incomplete discussion of United States v. Lopez, 484 F.3d 1186 (9th Cir. 2007), a very narrow interpretation of the facts and circumstances surrounding the instant case, and an incorrect assumption that the United States failed to follow changes in the law of the Ninth Circuit.

Defendant overlooks the entirety of the facts and the reasonable inferences that may be drawn from the facts in the instant case that, when viewed in a light favorable to the United States, at a minimum, support a finding of probable cause on Counts 1, 3, 5, and 7 (the "bringing to" offenses). The facts and circumstances in the instant case are distinguishable from those in Lopez in that Defendant had substantial contact with alien smugglers prior to the completion of the "bringing to" offense which give rise to his culpability as an aider and abettor. See Id. at 1199-00. Additionally, the Ninth Circuit Court of Appeals, in Lopez, specifically declined to speculate on "precisely what actions may or may not render a defendant guilty of aiding and abetting[]" a "bringing to" offense. Id. at 1199.

Lastly, Defendant, in his moving papers, makes reference to "the Government's [. . .] previous position on the "bringing to" offense." Based on the United States' previous practice, Defendant makes an assumption, with no basis in fact, that the United States must have failed to present evidence to account for the change or clarification in the law regarding the "bringing to" offense as announced in Lopez. Such speculation is not a proper basis upon which to order the disclosure of Grand Jury transcripts.

Accordingly, Defendant has not and can not demonstrate any "particularized need" to justify disclosure of the Grand Jury transcripts in the instant case.

**C. THE "BRINGING IN" COUNTS SHOULD NOT BE DISMISSED**

Defendant's motion to dismiss is based on a very narrow interpretation of the facts and circumstances surrounding the instant case. As discussed above, the facts and circumstances in the instant case are distinguishable from those in Lopez in that Defendant had substantial contact with alien smugglers prior to the completion of the "bringing to" offense which give rise to his culpability as an aider and abettor. See Id. at 1199-00. Accordingly, Defendant's motion to dismiss should be denied.

//

**D. <u>LEAVE TO FILE FURTHER MOTIONS</u>**

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

**IV**

**<u>CONCLUSION</u>**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's motions except where unopposed.

DATED: April 25, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*/s/ Paul L. Starita*
PAUL L. STARITA
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MARIO ARMANDO REYES-LOPEZ,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08CR0987-IEG<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, PAUL L. STARITA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions to: (1) compel/preserve discovery; (2) produce grand jury transcript or for *in camera* review, (3) dismiss indictment, and (3) leave to file further motions, together with statement of facts and memorandum of points and authorities on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. L. Marcel Stewart, Esq.
   Attorney for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

1. N/A.

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 25, 2008.

*/s/ Paul L. Starita*
PAUL L. STARITA